David Stanley PAVLACKA, Appellant,

v.

The STATE of Texas, Appellee.

No. 346–93.

Court of Criminal Appeals of Texas, En Banc.

Dec. 14, 1994.

Tom Moran, Dominique P. Gerard, Houston, TX, for appellant.

John B. Holmes, Jr., Dist. Atty., and Ernest Davila and Tommy Lafon, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

A jury convicted appellant of the offense of aggravated sexual assault pursuant to V.T.C.A. Penal Code, § 22.021(a)(1)(B)(iii) and (2)(B). The trial court set punishment, enhanced with one prior felony conviction, at thirty-five years imprisonment.

Appellant argued on appeal that the trial court erred to admit evidence of another incident between him and the child-complainant in this cause, the son of his live-in girlfriend, over his objection that it "had no bearing" on the case and was "prejudicial." The court of appeals construed these objections as sufficient to raise the issues whether the extraneous misconduct should have been excluded, either as irrelevant to any material issue in the case apart from its character conformity value, under Tex.R.Cr.Evid., Rule 404(b), or, even if relevant, nevertheless substantially more prejudicial than probative, under Tex.R.Cr.Evid., Rule 403. The court of appeals held that the trial court did not abuse its discretion in ruling the evidence was both relevant apart from character conformity, and that its probative value was not substantially outweighed by the danger of unfair prejudice, citing as authority this Court's opinions in *Montgomery v. State,* 810 S.W.2d 372 (Tex.Cr.App.1991) (Opinion on rehearing on Court's own motion), and *Vernon v. State,* 841 S.W.2d 407 (Tex.Cr.App. 1992). The court of appeals affirmed. *Pavlacka v. State,* 848 S.W.2d 325 (Tex.App.—Houston [1st] 1993). We granted appellant's petition for discretionary review to examine these holdings. Tex.R.App.Pro., Rule 200(c)(1) & (2).

### I.

In *Montgomery v. State,* supra, at 394, we noted that earlier holdings to the effect that extraneous sex offenses between parent and child are admissible in prosecutions for sexual assault of that child, such as *Boutwell v. State,* 719 S.W.2d 164 (Tex.Cr.App.1986) (Opinion on State's motion for rehearing), pre-date the Rules of Criminal Evidence. We nevertheless identified a possible rationale for arguing such evidence is admissible under Rule 404(b), *viz:*

> "[S]uch evidence may be relevant to counteract a perceived societal aversion to the notion that parents or others *in loco parentis* would actually commit sexual crimes against their own children. Because incestuous crimes usually occur in secrecy, the State's case may depend upon the credibility of the child complainant. Where the accused calls that credibility into question, evidence of other identical or similar acts of sexual misconduct perpetrated by a parent against his own child may well serve to shore up testimony of the child if *in logic* it shows a lascivious attitude (relevant to culpable intent) and a willingness to act on it (relevant to prohibited conduct) that a jury might otherwise be loathe to attribute to a parent toward his child. Where under the circumstances of the particular case the evidence *logically* serves such a purpose, it may have relevance under Rule 404(b), supra, apart from character conformity."

*Montgomery,* supra, at 394 (emphasis added) (footnote omitted). In *Vernon* we recapitulated this rationale from *Montgomery,* but emphasized that before evidence may be ad-

mitted for this purpose, the credibility of the complaining witness must be impugned. Because in *Vernon* the credibility of the complaining witness was not called into question, and because the State had identified no other purpose for which the evidence of other acts of sexual abuse perpetrated by the defendant against the same complainant was admissible under Rule 404(b), we held it was error to admit it.

In this cause the complainant was impeached. The State argues that evidence of other instances of sexual abuse perpetrated by appellant upon the complainant was therefore admissible to shore up his testimony, pursuant to *Montgomery* and *Vernon*, both supra. For his part appellant now argues, *inter alia*, that an impeached complainant cannot logically rehabilitate himself simply by testifying to "other crimes, wrongs, or acts" perpetrated by the accused against him. In order to fully address these contentions, we will set out the evidence adduced at trial in some detail.

### II.

In March of 1991 appellant was living in Houston with Billie Joe Phelps and her three children, one of whom is Michael Phelps, the thirteen year old, learning-disabled complainant in this cause. Michael testified during the State's case in chief that on an unspecified day in March appellant sexually assaulted him in the bathroom of their home. Specifically, Michael testified that as he was standing at the toilet appellant came into the bathroom, intoxicated, and closed the door behind him. Appellant then "pulled [Michael's] pants down and sucked on [his] penis." The encounter lasted no more than a minute.

1. Michael testified:
   Q. ... Can you tell the jury what happened when you and John were both naked in the bedroom?
   A. We was going to do it, but we didn't.
   Q. What do you mean by saying you were 'going to do it'?
   A. Because—
   Q. What do you mean? What does that mean? You were going to do what?
   A. We was going to do the same thing.

In May of 1991 Michael was discovered by his mother either engaging in or about to engage in some kind of sexual play with his younger brother, John. Michael testified that John told their mother "what [they] were going to do."[1] Asked on direct examination what he had said to his mother in response to John's admission, Michael testified, "I didn't say nothing." On cross-examination, however, Michael testified that he told his grandmother, first that he had "learned about that" from a friend at school, "[b]ut that was a story, made up." After his grandmother threatened to go to school the next day and "see if that was the truth," Michael changed his story, "and said it was [appellant]." On re-direct examination Michael testified that his account of the instant offense was truthful, but he also acknowledged having made a prior statement to a private investigator that it "was made up."[2] On re-cross-examination Michael agreed with appellant's counsel that it was really his prior inconsistent statement that was "the truth."

The day after Michael's outcry, two of his maternal aunts, Barbra Earhart and Tammy Pricket, took him and John out of school and down to the police station to report their story. On direct examination the prosecutor asked Earhart the following:

"Q. Prior to getting there to the station and after picking the boys up, did you or [Pricket], when she was in your presence, ever suggest to the boys what had happened and then they just affirmed that; or did they tell you a story on their own?
A. They told it on their own. The only thing we ever asked them was just to tell the truth.
Q. Did you give them any instructions on what to do once you arrived at the police station?

Q. In other words, the same thing the defendant did to you?
A. Yes."

On cross-examination Michael testified that he and his brother had not in fact been naked when his mother discovered them.

2. Presumably the prosecutor was anticipating defensive proof of this prior inconsistent statement, and was attempting to preempt that proof and thereby soften the impact.

A. No.

Q. Did you give them any instructions whatsoever on how to answer the police officer's questions?

A. No.

Q. Did you ever at any time suggest to them to create a story or to tell a story that was created that the defendant had sexually abused Michael?

A. No. There's no way I could make that up."

After Earhart's testimony, the State rested its case in chief.

Appellant presented three witnesses in his defense. First. appellant's mother, Jewel Absher, testified that she had been present when Michael made the prior inconsistent statement to the private investigator. At that time Michael had said the offense "did not happen." Asked by defense counsel whether she had led Michael to deny the offense, she answered, "No, I did not. I told Michael to tell the truth." Next, Michael's maternal grandmother, Silvia Doby, testified. She confirmed the fact that in May, Michael and his brother had been caught about to engage in oral sex, and that Michael had at first claimed to have learned such conduct from a boy at school. When Doby threatened to "go to the school ... and find out who the little boy was[,]" Michael "got scared, and then he said it was [appellant] that did it." To Doby's query "why he said that," Michael replied, "[b]ecause [appellant] wasn't there." Doby was allowed to testify that in her opinion, Michael had been telling the truth in his first assertion, and that he was not telling the truth when he accused appellant.[3] On cross-examination, Doby testified she had never represented to anyone that she believed appellant had sexually assaulted Michael.

Lastly, appellant himself testified. In rapid succession he denied having put Michael's penis in his mouth and, twice, having done

"what Michael says [he] did[.]" Again on cross-examination he denied committing the charged offense. The defense rested.

In rebuttal, the State called Tammy Pricket. Pricket testified that on the day after Michael's outcry, Doby had called her in tears and told her that appellant "had messed with the boys." The prosecutor asked Pricket:

"Q. Okay. And during the time that you and Barbra were with Michael and John [prior to taking them to the police station], did you ever attempt to ask them to make up this story or to tell a story that [appellant] had sexually assaulted them?

A. No, sir, I did not.

Q. Did you ever, at any time, attempt to enhance the story that they were already telling you?

A. No, sir. You don't tell a child things that they were telling us. It was too unbelievable for even me to believe."

The State also called Beatrice Wilkins, an elementary school teacher, professional counselor, and educational diagnostician, with experience dealing with sexually abused children. She testified that "sexually acting out behavior" in children is "frequently" an indicator of sexual abuse. She also testified that children who have been sexually abused will often recant their stories once they observe the disintegration of the family structure that often accompanies the initial disclosure.

Finally the State proposed to recall Michael to the stand and elicit testimony about "the extraneous matter which ha[d] been previously excluded under" a motion in limine. Citing *Boutwell v. State*, supra, the prosecutor argued that appellant had opened the door to admission of the extraneous matter by denying commission of the offense on the witness stand and by impeaching Michael with a prior inconsistent statement. Over objection, the trial court ruled the evidence admissible because "the complainant has

---

**3.** Earhart had earlier testified that Doby, her mother, was a "drug addict." Doby denied this. She admitted, however, that she had been arrest-

ed on two occasions in the past, for "checks" and shoplifting.

been impeached" and "it's more probative than prejudicial." Accordingly, Michael was allowed to testify briefly to another incident on an unspecified occasion when appellant assaulted him. Michael was lying on his stomach on his bed watching television when appellant, once again intoxicated, lay on top of him, "moving [his groin area] up and down ... on [Michael's] butt" in simulated anal intercourse. Michael told appellant to get off of him, which appellant immediately did.

The court of appeals found that appellant's defensive posture "put before the jury the theory that complainant's testimony was fabricated and the product of improper influence or motive." *Pavlacka v. State*, supra, at 327. It concluded that the evidence of appellant's extraneous misconduct "was relevant, entirely apart from character conformity, to rebut that theory. *Vernon*, 841 S.W.2d at 411." *Id.* Admission of that evidence therefore did not violate Rule 404(b). As for the Rule 403 contention, the court of appeals concluded that "[i]n a prosecution of a parent for a sex offense against a child victim, where the credibility of the child has been called into question, the probative value of evidence of extraneous sex acts between the same two individuals will ordinarily outweigh its prejudicial effect." *Id.* Accordingly, the court of appeals ruled that the trial court did not abuse its discretion in admitting Michael's rebuttal testimony.

### III.

For reasons about to be developed, we hold that the court of appeals erred to conclude Michael's rebuttal testimony was admissible to rebut a defensive theory of fabrication. Nor was that testimony relevant to rebut appellant's denials that he committed the instant offense—at least not apart from the impermissible inference of character conformity. Finally, we reject the theory of admissibility expressly adopted by the trial court, *viz:* that the testimony was relevant to rehabilitate Michael's earlier testimony during the State's case in chief. For we agree with appellant that an impeached complainant cannot logically rehabilitate himself with testimony of other "crimes, wrongs, or acts."

### A.

■ The court of appeals concluded that evidence of the extraneous misconduct was relevant to rebut defensive evidence that placed in issue whether Michael's testimony was the product of improper influence or motive. *Id.*, at 327. It was therefore admissible for a legitimate purpose under Rule 404(b). But as our detailed recitation of the facts should demonstrate, the record does not support this conclusion. It is true that the *State* asked both Earhart and Pricket whether they had suggested to Michael that he implicate appellant in his statement to the police. However, both witnesses emphatically denied it. Counsel for appellant did not pursue the matter on cross-examination. Nor did he take such a tack in his final summation at the end of the guilt phase of trial. Instead he argued, consistent with the evidence he presented in defense, that, once caught in a compromising situation with his brother, Michael had at first told the truth—that a little boy at school had exposed him to sexual conduct—but soon changed his story because he believed the truth would get him in trouble, and appellant, who was absent at the time, made a ready scapegoat. He did not remotely suggest that Michael's aunts had attempted to plant the story in Michael's head.

In any event, the State's express theory of admissibility at trial was that the extraneous misconduct was relevant to rebut appellant's denials and to rehabilitate Michael's prior inconsistent statement. The State did *not* argue at trial that it was admissible to counter any suggestion Michael had been coached to tell a fabricated story. Compare *Self v. State*, 860 S.W.2d 261 (Tex.App.—Fort Worth 1993) The court of appeals erred to hold the evidence was admissible to rebut a defensive theory of fabrication.

### B.

■ We next turn to one of the arguments for admissibility that the State *did* make at trial, *viz:* that the extraneous misconduct was relevant to rebut appellant's emphatic

denials that he committed the instant offense. We hold that this is not a permissible purpose for "evidence of other crimes, wrongs, or acts" under Rule 404(b).[4] As we said in *Vernon*, "unless it can plausibly be argued that the repetition of 'unnatural' acts makes an elemental fact more likely, then its repetition is not an evidentiary fact of consequence either." 841 S.W.2d at 411. In short, the only corroborative force that Michael's testimony of the simulated anal intercourse has is insofar as it shows that when appellant committed the charged offense, he was behaving conformably with his character. At least the State, as proponent of the evidence, suggested no theory of logical relevance *other than* character conformity by which Michael's rebuttal testimony can be said genuinely to rebut appellant's denials. Yet this is precisely the inference that Rule 404(b) prohibits, because the probative value is deemed substantially outweighed by the danger of unfair prejudice as a matter of law. *Montgomery v. State*, supra, at 387.[5]

### C.

■ Finally we turn to the contention that the extraneous misconduct was admissible to shore up Michael's credibility after he was impeached with the prior inconsistent statement. This was the theory of admissibility that the trial court expressly accepted in ruling Michael's rebuttal testimony admissible. Appellant argues, *inter alia*, that testimony from the same complainant about another offense perpetrated by the same parent or person *in loco parentis* that committed the charged offense does not logically rehabilitate the complainant. In short, he contends that an impeached complainant cannot rehabilitate himself. We agree.

A complainant's testimony regarding the charged offense may be undermined in any number of ways, including: 1) by prior inconsistent statement, Tex.R.Cr.Evid., Rule 612(a); 2) evidence of bad character for truthfulness, Tex.R.Cr.Evid, Rule 608(a); or 3) simply by a denial by the accused that what the complainant testified to ever took place. The State may counter with evidence that logically rehabilitates that complainant. Such rehabilitation may take the form of: 1) prior consistent statements, Tex.R.Cr.Evid., Rules 612(c) and 801(e)(1)(B), or expert testimony explaining why child complainants may seem to prevaricate, *Duckett v. State*, 797 S.W.2d 906 (Tex.Cr.App.1990);[6] 2) evidence of good character for truthfulness, Rule 608(a)(2), supra; or 3) any evidence that logically corroborates the complainant's account of the charged offense, *Cohn v. State*, 849 S.W.2d 817 (Tex.Cr.App.1993).[7] More-

---

**4.** The trial court did not admit the evidence under this theory, in any event.

**5.** Belatedly, the State argues that the evidence of extraneous misconduct in this cause was also admissible as proof of "motive" under Rule 404(b). Judge Campbell, picking up on this cue, also argues a motive theory. Neither the trial court nor the court of appeals was called upon to rule on the propriety of admitting Michael's rebuttal testimony as evidence of motive, and nor shall we. We do note that Professor Imwinkelried's treatise quotes with approval a commentary suggesting that this particular "motive" theory of logical relevance is nothing more than a subterfuge for admitting character conformity evidence, pure and simple. Compare Imwinkelried, Uncharged Misconduct Evidence, § 3:16 and § 3:18. Of course, that would violate Rule 404(b).

**6.** Consistently with *Duckett*, supra, the State may be able to proffer an expert to testify, e.g., that in his opinion, based upon experience or empirical data, children who have been sexually abused sometimes give conflicting accounts or even recant their initial outcry. To the extent such testimony "will assist" the factfinder in evaluating the impeachment value of a complainant's prior inconsistent statement, it is admissible under Tex.R.Cr.Evid., Rule 702. The State may *not*, of course, elicit so-called "expert" testimony that a particular child is telling the truth, or that child complainants as a class are worthy of belief. *Yount v. State*, 872 S.W.2d 706 (Tex.Cr.App. 1993). Such testimony "crosses the line" between evidence that will genuinely "assist" the jury, under Rule 702, and that which usurps the jury's function to judge credibility of witnesses. *Id*, at 708; *Duckett v. State*, supra, at 920.

**7.** Of course, evidence that corroborates the complainant's testimony is not admissible solely as rehabilitation evidence. It may also come in during the State's case in chief. *Cohn v. State*, supra, at 818.

over, we have suggested that evidence from some source other than the impeached complainant that an accused standing *in loco parentis* to the complainant molested him on another occasion may be admissible to the extent that it logically serves to rehabilitate the complainant. *Montgomery* and *Vernon*, both supra.[8]

We agree with the Fort Worth Court of Appeals, however, that testimony of other molestations coming from an impeached complainant cannot logically serve to rehabilitate that complainant. *Hill v. State*, 852 S.W.2d 769 (Tex.App.—Fort Worth 1993); *Jessup v. State*, 853 S.W.2d 141 (Tex.App.—Fort Worth 1993). The question is one of credibility. The mere repetition of allegations from a source of dubious credibility does not render that source any more credible. Absent some independent corroboration, there is no better reason to believe the complainant's account of extraneous misconduct than there is to believe his account of the misconduct for which the accused is on trial. Simply put, an impeached complainant's own testimony as to other molestations, without more, is just as unreliable as rehabilitative evidence of the accused's lascivious intent and willingness to act on it as is his testimony regarding the charged offense. It cannot therefore serve logically to rehabilitate him.

Because the only source of evidence of the extraneous misconduct in this cause was the impeached complainant himself, Michael, we hold it was not admissible to rehabilitate him, notwithstanding language in *Montgomery* and *Vernon*.[9]

*IV.*

Because the State identified no viable theory of admissibility of Michael's rebuttal testimony under Rule 404(b), the trial court abused its discretion to admit it. The court of appeals erred to conclude otherwise. Accordingly, we reverse the judgment of the court of appeals and remand the cause to that court for an evaluation of harm under Tex.R.App.Pro., Rule 81(b)(2).[10]

CAMPBELL, Judge, dissenting.

Despite the majority's labored analysis, this is not a difficult case. The question presented is simply whether the court of appeals erred in holding that the trial court did not abuse its discretion in admitting evidence of uncharged sexual misconduct on the part of appellant. The majority concludes that, "[b]ecause the State [at trial] identified no viable theory of admissibility ... under Rule 404(b) [of the Texas Rules of Criminal

**8.** A close study of our opinion on rehearing in *Montgomery* shows that we did not rely on *Boutwell*'s *in loco parentis* theory of admissibility to hold it had not been an abuse of discretion for the trial court to find the extraneous misconduct relevant in that cause. Instead, we fell back upon our own theory, articulated on original submission, that the evidence was admissible as relevant to show the defendant's specific intent to arouse and gratify his own sexual desire, an elemental fact. 810 S.W.2d at 394. In *Vernon* we recognized *Montgomery*'s apologia for *Boutwell*, but did not necessarily adopt it as law. Indeed, we made clear in *Vernon* that *Boutwell* has no "legal force independent of Rule 404(b)." 841 S.W.2d at 411. We did hold in *Vernon*, however, that to the extent it had any viability, the *in loco parentis* theory of admissibility was contingent upon impeachment of the child complainant. Because the complainant in *Vernon* was not impeached, and because no other theory of admissibility under Rule 404(b) was posited by the State, we held it was error to admit evidence of extraneous misconduct. Thus, although we have recognized that *Boutwell* does not control, we have not yet definitively rejected *or* embraced

its *in loco parentis* theory of admissibility for purposes of Rule 404(b). Because in any event we agree with appellant that in logic a child complainant cannot rehabilitate himself, see text *post*, we need not make that determination today either.

**9.** The prosecution was not without recourse in this cause. *Sans* objection the State was allowed to call Wilkins, its expert in sexually abused children, who offered a plausible explanation for the complainant's vacillation. See *Duckett v. State*, supra. Moreover, the State successfully impeached Doby, showing that, contrary to her testimony on direct examination, she had made prior statements showing she apparently had at first believed Michael's story that appellant committed the instant offense.

**10.** Given this disposition, we need not decide whether the trial court abused its discretion to find the evidence need not have been excluded under Rule 403.

Evidence], the trial court abused its discretion [in admitting the evidence]," and "[t]he court of appeals erred to conclude [sic] otherwise."[1] The reality, however, is that the court of appeals did not err and the trial court did not abuse its discretion, because the uncharged misconduct evidence was admissible under Rule 404(b) to prove appellant's *motive* to commit the charged offense. It is quite irrelevant that the State did not propound this theory of admissibility at trial. What *is* relevant is that the trial court made the right decision, even if it did so for the wrong reason. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990) ("If the trial judge's decision [to admit evidence] is correct on any theory of law applicable to the case, ..., it will be sustained.").

The complainant, appellant's teenage stepson, testified at trial that, on an unspecified occasion in March 1991, he was in the bathroom of his home urinating when appellant, who was intoxicated, came into the bathroom and shut the door behind him. Appellant then walked over to the complainant, knelt down, and fellated him. This was the conduct for which appellant was charged.

The complainant also testified, over appellant's objection,[2] about uncharged sexual misconduct on appellant's part. The complainant testified that, on an unspecified occasion, he was lying on his stomach in his bedroom watching television when appellant, who was again intoxicated, came into the room, climbed on top of him, and moved his groin area "up and down" on the complainant's buttocks. According to the complainant, both he and appellant were fully clothed at the time of the misconduct.

It is a fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged and not for being a criminal generally. *Owens v. State*, 827 S.W.2d 911, 914 (Tex.Crim. App.1992). Rule 404(b) incorporates this tenet by prohibiting the admission of uncharged misconduct evidence that shows nothing more than the accused's general propensity to commit criminal acts. *Id.* Thus, under Rule 404(b), uncharged misconduct evidence is admissible only if it helps prove something other than simple propensity to commit crimes. In other words, the admission of the uncharged misconduct evidence must be supported by a theory of relevance beyond propensity.

*Motive* is such a theory of relevance, and it is explicitly recognized in Rule 404(b). The uncharged misconduct evidence presented at appellant's trial was admissible to prove his motive for the charged offense—that motive being his abnormal sexual desire for the complainant—regardless of whether the complainant's credibility was challenged. As we explained in *Brown v. State*, 657 S.W.2d 117, 118 (Tex.Crim.App.1983) (quoting *Texas Law of Evidence* ):

> The sexual passion or desire of X for Y is relevant to show the probability that X did an act realizing that desire. On the principle set out above, this desire at the time in question may be evidenced by proof of its existence at a prior or subsequent time. Its existence at such other time may, of course, be shown by any conduct which is the natural expression of such desire.

No less an authority than Professor Wigmore agreed that uncharged sexual misconduct evidence is admissible to prove the motive of the defendant to commit the charged offense. Wigmore explained that "[t]he prior or subsequent existence of a sexual passion in A for B is relevant ... to show its existence at the time in issue." 2 Wigmore, *Evidence* § 398, at 445 (Chadbourn rev.1979).

---

1. Rule 404(b) provides in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

2. Appellant timely objected that the uncharged misconduct evidence had "no bearing whatsoever on the matter before ... the jury" and that "[the] rules for why extraneous offenses are not allowed to be brought in ... should be adhered to." Thus, it was reasonably apparent that appellant was relying upon Rule 404(b). *See* Tex. R.Crim.Evid. 103(a).

In prosecutions for sexual abuse of children by those in *loco parentis,* evidence of motive may be critical because it helps counteract jurors' "aversion to the notion that parents or others *in loco parentis* would actually commit sexual crimes against their own children." *Montgomery v. State,* 810 S.W.2d 372, 394 (Tex.Crim.App.1990).

Several other jurisdictions have already addressed the admissibility of uncharged sexual misconduct evidence in child sex abuse prosecutions. They have held that, in such prosecutions, evidence of uncharged sexual misconduct involving the defendant and the same or other children is admissible under Rule 404(b) to prove the defendant's motive in committing the charged offense. *See, e.g., State v. Martin,* 242 Neb. 116, 493 N.W.2d 191, 194–196 (1992) (in prosecution of defendant for sexual assault of minor daughter, daughter's testimony regarding defendant's uncharged sexual misconduct with her held admissible under Rule 404(b) to prove defendant's motive to commit charged offense); *State v. Roman,* 622 A.2d 96, 98–99 (Me. 1993) (in prosecution of defendant for sexual assault of 8–year–old female, evidence of defendant's uncharged sexual misconduct with same child held admissible under Rule 404(b) to prove defendant's sexual attraction toward child); *State v. Tobin,* 602 A.2d 528, 531–532 (R.I.1992) (in prosecution of defendant for sexual assault of minor niece, niece's testimony regarding defendant's uncharged sexual misconduct with her held admissible under Rule 404(b) to prove defendant's sexual attraction toward niece); *State v. Plymesser,* 172 Wis.2d 583, 493 N.W.2d 367, 372–373 (1992) (in prosecution of defendant for sexual assault of female child, evidence of defendant's uncharged sexual misconduct with another female child held admissible under Rule 404(b) to prove defendant's motive to commit charged offense); *Brown v. State,* 817 P.2d 429, 433–434 (Wyo.1991) (in prosecution of defendant for sexual assault of two minor stepdaughters, stepdaughters' testimony regarding defendant's uncharged sexual misconduct with them held admissible under Rule 404(b) to prove defendant's motive to commit charged offense); *see also Bowden v. State,* 538 So.2d 1226, 1235 (Ala.1988) (in prosecution of defendant for rape of child, evidence regarding defendant's uncharged sexual misconduct with child admissible to prove his motive to commit charged offense); *State v. Garner,* 116 Ariz. 443, 569 P.2d 1341, 1344–1346 (1977) (in prosecution of defendant for sexual assault of child, evidence of defendant's uncharged sexual misconduct with same child admissible to prove defendant's sexual attraction toward child).

From the dicta in *Montgomery,* and from the holdings of many of our sister courts around the country, it is plain to me that the trial judge in this case properly admitted evidence of uncharged sexual misconduct, under Rule 404(b), as valid, non-propensity evidence that tended to prove motive. From the majority's failure to so hold, I dissent. I would affirm the judgment of the court of appeals.

McCORMICK, P.J., and WHITE, J., join.