# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00416-CR

**Gregory Charles Gorman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
### NO. 06-4495-2, HONORABLE TIMOTHY L. WRIGHT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Gregory Charles Gorman guilty of serving alcoholic beverages to a minor. *See* Tex. Alco. Bev. Code Ann. § 106.06(a) (West 2007). Gorman was sentenced to confinement for 365 days, suspended for a period of 24 months, and a $4,000 fine, half of which was probated. On appeal, Gorman argues that the trial court erred in allowing the State to introduce evidence of extraneous acts of providing alcohol to a minor. Because we have determined that the trial court did not err in admitting evidence of extraneous acts, we affirm the judgment of conviction.

## BACKGROUND

The events giving rise to Gorman's conviction—the facts of which are largely disputed—took place on February 11, 2006. At that time, Gorman was employed as the manager of the Brooklyn Pie Company, a restaurant in Georgetown, Texas. The victim in this case, L.F., a seventeen-year-old employee at the restaurant, testified that on the night in question, she stayed at

the restaurant after closing to help Gorman clean up. She further testified that Gorman offered her an alcoholic drink, which she accepted, and that she then watched Gorman pour different types of alcohol into a bucket, creating a mixture that was light green in color and that she thought "was supposed to be like a margarita." L.F. testified that she dipped a cup into the bucket and drank from it periodically while cleaning the restaurant, noting that the last thing she remembers from the evening was "sitting on the stool listening to music, talking to [Gorman]."

Todd Wagner, L.F.'s boyfriend at the time of the incident, testified that he had made plans with L.F. for that particular evening, and that after several unsuccessful attempts to contact her through phone calls and text messages, he became concerned and drove to Brooklyn Pie Company. When he arrived, Wagner observed L.F.'s car parked outside and heard loud music playing from inside the restaurant. According to Wagner, he knocked on the door and windows of the restaurant for approximately five to ten minutes, but received no response. He then called some friends, including Chris Sharp, also a witness at trial, for assistance. Sharp and the other boys arrived on the scene approximately ten to fifteen minutes later and they continued to knock until Gorman answered. In response to the boys' questions about L.F.'s whereabouts, Gorman insisted that she was not in the restaurant and that she had been picked up by friends in a black SUV earlier in the night. Gorman acknowledged in his testimony that he lied to Wagner and his friends about L.F.'s presence in the building, stating that he had been concerned about the boys' intentions.

Wagner testified that he then placed a phone call to Joan Surko, L.F.'s mother, and passed the phone to Gorman, who told Surko that L.F. was not inside the restaurant, and that she had been picked up by friends in a black Lincoln towncar.

2

Both Sharp and Wagner testified that as they were talking to Gorman, L.F. came to the door in the nude for a few brief moments before withdrawing into the restaurant and closing the door. They further testified that Gorman insisted that the woman they had seen was his girlfriend, who was visiting for Valentine's Day weekend. One of the boys called the police and then, according to Wagner and Sharp, Gorman reentered the restaurant.[1]

Officer Robbins of the Georgetown Police Department was the first officer to arrive on the scene in response to Wagner's call, and several officers followed. According to Robbins's testimony, Gorman informed the officers that no one else was inside the building.[2] Gorman agreed to allow a search of the building and during the search, Robbins discovered L.F. "tucked down" behind a freezer, in the space between the freezer and the wall. Robbins testified that the freezer "had been moved out where somebody could get in there," and that he did not believe L.F. could have gotten herself behind the freezer because "[s]he would have had to climb on top of the chest freezer and then climb back down, and then get in that position. I don't think she would have been capable of doing that." Robbins further testified that because L.F. was intoxicated and unresponsive, he was forced to physically lift her from behind the freezer. Robbins also noted that he did not

---

[1] There is some dispute regarding whether Gorman reentered the restaurant prior to the arrival of the police. Gorman testified that he remained outside, while both Wagner and Sharp testified that Gorman went back into the restaurant. Officer Robbins, the first officer to arrive on the scene, testified that he could not recall whether Gorman was outside when he arrived, stating, "I don't remember if he was standing right there in the front door, or if I actually knocked on the door. Seems like I knocked on it, but I'm not—I'm not a hundred percent on that." Robbins further testified, after reviewing his incident report, that the report implies that Gorman was outside the restaurant when the police arrived.

[2] After reviewing his incident report, Robbins testified on cross-examination that the report indicated that Gorman refused to respond to questions regarding whether anyone was inside the restaurant.

believe L.F., who was fully clothed when Robbins found her behind the freezer, was capable of dressing herself in her intoxicated state.

Surko, L.F.'s mother, testified that by the time she got to the scene at some point after the arrival of the police, L.F. was no longer unresponsive but had become aggressive and violent, "[f]lailing her arms and her hands, screaming and hollering." EMS transported L.F. to Georgetown Hospital, where it was determined that she had a blood-alcohol level of .247.

Gorman's testimony regarding the events on the night in question differed significantly from L.F.'s testimony. According to Gorman, L.F. did not remain at the restaurant to help clean up after closing, but instead left with friends and returned some time later, appearing "twitchy and nervous." Gorman testified that when L.F. returned, he gave her a cup of citrus soda from the restaurant soda fountain, while he continued to drink from a bucket of margaritas that he had prepared earlier in the day.[3] Gorman further testified that he sat and talked with L.F. in order "to find out what was going on," until Wagner and his friends arrived. He also explained that there were two cups containing alcoholic beverages at the scene because he had inadvertently added too much salt to his drink, and was using a second cup to dilute the first. Gorman maintained that he did not offer or provide alcohol to L.F. at any time on the night in question.

---

[3] Several witnesses, including police officers and fellow employees who returned to the restaurant after learning that emergency vehicles were on the premises, testified that they had observed cups at the scene, containing what appeared to be an alcoholic beverage. The number of cups, the contents and temperature of each cup, and whether or not lipstick marks were present on the side of any particular cup was disputed at trial. For our purposes, it is sufficient to note that cups containing alcoholic beverages were observed at the scene.

The jury found Gorman guilty of negligently serving alcoholic beverage to a minor. *See id*. The trial court sentenced him to one year's confinement, suspended for 24 months, and a $4,000 fine, half of which was probated, and Gorman now appeals his conviction.

## STANDARD OF REVIEW

A trial court's decision to admit evidence of extraneous acts is reviewed for an abuse of discretion. *Saenz v. State*, 843 S.W.2d 24, 26 (Tex. Crim. App. 1992). A trial court should only be reversed for an abuse of discretion when the decision lies outside the zone of reasonable disagreement. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). Trial courts have broad discretion in their evidentiary rulings because "trial courts are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

## DISCUSSION

In a single issue on appeal, Gorman argues that the trial court erred in admitting evidence that he had committed extraneous acts of giving alcohol to a minor. This evidence was admitted through the testimony of C.J., a former employee at the Brooklyn Pie Company. C.J., who was seventeen at the time of her employment at the restaurant, testified that Gorman would frequently offer her alcohol while she was working for him, and that he had occasionally poured alcohol into her drinks without her knowledge or permission. C.J. also testified, in response to questions on cross-examination, that Gorman was able to surreptitiously offer her alcohol during

5

working hours without anyone noticing, even though other employees were present in the small restaurant.[4]

Gorman objected to C.J.'s testimony, arguing that it constituted inadmissible propensity evidence, *see* Tex. R. Evid. 404(b), and that its probative value was outweighed by the danger of unfair prejudice, *see* Tex. R. Evid. 403. The trial court admitted the evidence for the limited purpose of showing knowledge and absence of mistake, but rejected the State's argument that the evidence was admissible as proof of a plan. *See* Tex. R. Evid. 404(b) (containing nonexhaustive list of purposes for which evidence of extraneous acts may be admitted, including to show knowledge, plan, or absence of mistake). The trial court gave the jury a limiting instruction regarding C.J.'s testimony, instructing them to "consider her testimony only so far as it indicates knowledge or absence of mistake on behalf of the defendant."

*Rule 404(b)*

"It is a fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged and not for being a criminal generally." *Pavlacka v. State*, 892 S.W.2d 897, 904 (Tex. Crim. App. 1994). Therefore, evidence of extraneous acts is inadmissible to prove that a defendant acted in conformity with his character by committing the charged offense. *See* Tex. R. Evid. 404(b). Extraneous-offense evidence may be admitted, however, if it "tends to make an elemental or evidentiary fact more or less probable or tends to rebut

---

[4] C.J. testified, "Most of the time [Gorman] would pull me aside, or in the bathroom back to the cabinet, and directly hand me a bottle and tell me to take a swig or a shot." She further testified that Gorman would offer her alcohol "almost every shift."

some defensive theory," because such evidence "is relevant beyond its tendency to prove a person's character or that he acted in conformity therewith." *Jones v. State*, 119 S.W.3d 412, 419 (Tex. App.—Fort Worth 2003, no pet.). Consequently, evidence of extraneous acts may be admitted to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b).

The jury in this case was instructed to consider C.J.'s testimony only to the extent that it showed knowledge or absence of mistake on behalf of the defendant. Evidence is admissible to show knowledge when such evidence tends to prove a material fact in connection with the offense. *See, e.g.*, *Felder v. State*, 848 S.W.2d 85, 98 (Tex. Crim. App. 1992) (evidence of extraneous offenses of flight or giving false information to police officer is admissible to show knowledge of guilt); *Thompson v. State*, 54 S.W.3d 88, 99 (Tex. App.—Tyler 2001, pet. ref'd) (evidence of extraneous offenses was admissible to show defendant's knowledge of gang leader's violent nature where defendant charged as party to gang-related murder); *Powell v. State*, 5 S.W.3d 369, 383 (Tex. App.—Texarkana 1999, pet. ref'd) (evidence of extraneous offense of cocaine possession was admissible to show defendant's knowledge that substance in his possession was cocaine); *Duncan v. State*, No. 03-99-00185-CR, 1999 Tex. App. LEXIS 6902, at \*5 (Tex. App.—Austin Sept. 10, 1999, no pet.) (not designated for publication) (evidence of defendant's previous thefts was admissible to show defendant's knowledge that he could quickly "turn over" stolen jewelry for cash).

In the present case, Gorman's knowledge of the ease with which underage employees gain access to alcoholic beverages was put at issue by defense counsel's attempt to show, through cross-examination, that Gorman took steps to prevent underage employees from accessing alcohol

on the restaurant premises. *See Robbins v. State*, 88 S.W.3d 256, 261 (Tex. Crim. App. 2002) (extraneous-offense evidence admissible to show intent where appellant put intent at issue through vigorous cross-examination). Michael LaMonica, an employee at the Brooklyn Pie Company at the time of the offense, testified at trial that Gorman kept alcoholic beverages in a cabinet at the back of the restaurant.[5] On cross-examination, defense counsel elicited testimony from LaMonica that he had never seen Gorman furnish alcohol to an underage employee and that Gorman took steps to safeguard his alcohol from underage employees, storing it "in a place where limited access [sic] if you go there without the boss's knowledge you're going to get in trouble." During cross-examination of Angela LaMonica, another employee at the restaurant, defense counsel elicited testimony that "the cabinet that [the alcohol]'s physically in, the employees aren't supposed to be in there . . . unless you're a manager and you're of age." Therefore, C.J.'s testimony that Gorman frequently offered her alcohol during working hours and occasionally poured alcohol into her drinks is probative of the material fact that Gorman had knowledge that underage employees could and did easily gain access to alcohol on the premises.

In reviewing whether C.J.'s testimony was properly admitted for the purpose of showing knowledge, we note that a trial court's admissibility decision under 404(b) must be upheld on appeal if that decision is within the zone of reasonable disagreement. *Robbins*, 88 S.W.3d at 261. "An appellate court would misapply the appellate abuse of discretion standard of review by reversing

---

[5] Multiple witnesses testified that the Brooklyn Pie Company did not have a license to sell alcoholic beverages, that Gorman kept tequila and margarita mix in an unlocked storage cabinet located in the employee bathroom at the back of the restaurant, and that, while certain customers were occasionally provided complimentary wine or beer, alcohol stored in the employee bathroom was never offered to customers.

a trial court's admissibility decision solely because the appellate court disagreed with it." *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). In light of the applicable standard of review and the fact that the trial court "has the best vantage from which to decide" questions of admissibility, *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh' g), we hold that the trial court did not abuse its discretion in admitting C.J.'s testimony. Because we have determined that the trial court did not err in admitting the evidence for the purpose of showing knowledge, we need not address whether the evidence was also admissible to show absence of mistake. *See Robbins*, 88 S.W.3d at 262 (trial court decision must be upheld if it is correct on any theory of law applicable to the case, especially with regard to admission of evidence) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

*Rule 403*

Having determined that the extraneous-offense evidence was properly admitted under Rule 404(b), we next review whether the trial court abused its discretion by overruling Gorman's Rule 403 objections. Otherwise relevant and admissible evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tex. R. Evid. 403. When a party objects to the admission of evidence on the basis of Rule 403, the trial court is required to balance probative value against the potential for prejudice. *Long v. State*, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991).

In conducting a Rule 403 balancing test, the trial court must consider four factors: (1) the inherent probativeness of the extraneous-offense evidence, (2) the potential the evidence has

9

to impress the jury in an irrational "but nevertheless indelible" way, (3) the amount of time the State will need to develop the evidence, during which the jury's attention will be diverted from the indicted offense, and (4) the force of the State's need for this evidence in order to prove a fact of consequence. *Montgomery*, 810 S.W.2d at 389-90. Furthermore, "trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Id.* at 389.

The first factor in the test, the inherent probativeness of the extraneous-offense evidence, is established in the present case by the similarities between the extraneous offense—providing alcohol to C.J., a minor employee at the restaurant—and the charged offense—providing alcohol to L.F., also a minor employee at the restaurant. *See id.* at 390 (probativeness is often "a function of the similarity of the extraneous transaction to the charged offense"). The inherent probativeness of the evidence is further established by the closeness in time of the extraneous acts and the charged offense. *See Templin v. State*, 711 S.W.2d 30, 34 (Tex. Crim. App. 1986) ("[t]he period of time separating the extraneous transaction from the charge in chief is a factor to be considered" in Rule 403 determination). C.J. testified that she worked for Gorman from November 2005 to February 2006, and that Gorman's offers to provide her with alcohol during this time period were "pretty much constant." The charged offense took place on February 11, 2006, and while C.J. was not employed at the restaurant at that time, she testified that L.F. had been hired as her replacement, suggesting that there was an extremely short period of time between the extraneous acts and the charged offense.

Furthermore, the strength of the evidence connecting Gorman to the extraneous acts also increases the probativeness of C.J.'s testimony. While C.J.'s testimony is the only evidence of the extraneous acts, we note that the sole evidence to the contrary is Gorman's subsequent denial. Similarly conflicting evidence has been considered sufficient to connect a defendant to an extraneous event. *See Jones*, 119 S.W.3d at 422 (upholding admissibility of extraneous-act evidence that appellant had offered underage girls money to remove their clothing where evidence consisted solely of girls' testimony and contrary evidence consisted solely of appellant's denial). Therefore, in light of the similarity of the extraneous acts and the charged offense, the closeness in time, and the strength of the evidence connecting Gorman to the extraneous acts, we find that the first factor in the balancing test supports the trial court's ruling under Rule 403.

The second factor in the balancing test, the potential that the evidence will impress the jury in an irrational way, also supports the trial court's ruling in this case. The extraneous act of providing alcohol to C.J. appears to be no more objectionable than the charged offense of providing alcohol to L.F., and therefore was not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose. *See Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996) (holding that previous murder committed by accused was no more heinous than murder for which he was charged, and therefore evidence of extraneous offense not likely to be so inflammatory as to prevent jury from considering it for proper purpose).

The third factor of the balancing test also supports the trial court's determination, because the amount of time needed by the State to offer the extraneous-act evidence was minimal

in comparison to the entire trial. As the State notes in its brief, C.J.'s entire testimony, including cross-examinations and a discussion outside the presence of the jury, constitutes only 23 pages in a reporter's record that devotes a total of three volumes and 317 pages to the jury trial on guilt/innocence. Similarly, C.J. was only one of eleven State's witnesses. Furthermore, there is no indication in the record that the State spent an excessive amount of time developing C.J.'s testimony.

The fourth and final factor of the Rule 403 balancing test is the force of the State's need for the extraneous-offense evidence in order to prove a fact of consequence. *See Montgomery*, 810 S.W.2d at 390. As previously discussed, C.J.'s testimony was necessary to show Gorman's knowledge that underage employees could access and consume alcoholic beverages stored at the restaurant, refuting the defensive theory that Gorman took steps to prevent underage employees from drinking alcohol on the premises.

In conducting our review of the trial court's Rule 403 determination, we must bear in mind the applicable standard of review, which is that "a reviewing court is to reverse the trial court's judgment 'rarely and only after a clear abuse of discretion,' recognizing that the trial court is in a superior position to gauge the impact of the relevant evidence." *Jones*, 119 S.W.3d at 421-22 (citing *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)). In light of this deferential standard of review and the fact that each of the Rule 403 balancing test factors lends support to the trial court's ruling, we hold that the trial court did not abuse its discretion in determining that the probative value of C.J.'s testimony was not substantially outweighed by the danger of unfair prejudice. Gorman's sole issue on appeal is overruled.

## CONCLUSION

Because we have determined that the trial court did not err in admitting evidence of Gorman's extraneous acts of providing alcohol to a minor, we overrule appellant's issue and affirm the conviction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   July 17, 2008

Do Not Publish