COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 CHARLES ANDREW APPLEWHITE,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00121-CR
  
                          Appeal from
  
 432nd District
 Court
  
 of El Paso County,
 Texas
  
 (TC # 1102795D)
 
 
 
 
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

Charles Andrew Applewhite appeals his convictions of aggravated sexual
assault of a child (Count I, II, III, and VI) and indecency with a child by
contact (Counts IV and V).  We affirm.

FACTUAL SUMMARY

            Forty-three-year-old Tamera has
three children, Chip Tire[1],
Michael, and Charity.  Tamera and her
former husband, Richard, both have cerebral palsy.  Appellant worked in Tamera’s home while she
and Richard were married and he sometimes spent the night with them.  On those occasions when he stayed overnight,
Appellant slept in Chip’s room.  After
Tamera and Richard divorced, she and the children began living with
Appellant.  The children usually slept in
the same bedroom with her but Chip sometimes slept in Appellant’s bedroom.  Chip, who was nineteen-years-old at the time
of trial, testified that he had a “rocky” relationship with his father when he
was a child.  His father, who uses a
motorized wheelchair, would run into him and sometimes grab him by the hair and
drag him alongside the wheelchair.  When Chip
was eight or nine-years-old, Appellant began working as a home healthcare
worker for Tamera and Richard.  Chip
would sometimes stay overnight at Appellant’s house and he began seeing him as
a father figure because of the way Appellant treated him.  Unlike Richard who often yelled at Chip,
Appellant spoke calmly and listened to him like a loving father.  Chip went so far as to refer to Appellant as
“Dad.”  At first, Chip slept on the couch
but he eventually began sleeping in Appellant’s bedroom.  Appellant also stayed overnight at Chip’s
house and slept in his bedroom.  Appellant
kissed Chip and touched him sexually on many occasions.  He specifically recalled one incident of anal
intercourse when Appellant demanded that Chip put his penis in Appellant’s anus.  It stopped abruptly because Richard knocked
on the door and came into the bedroom. 
Appellant often put his penis in Chip’s mouth to the point that Chip
described it as “nonstop.”  Chip also
recalled Appellant inserting his penis in Chip’s anus on a few occasions.  Chip did not try to stop the assaults nor did
he tell anyone because Appellant made him feel that it was acceptable behavior
and he told Chip that he would do it if he loved him.  

Chip’s
grandmother, Shannon, suspected that Appellant was sexually abusing Chip and
made a report to CPS.  Appellant told Chip
that Shannon was evil and was trying to break up the family.  He also told Chip that CPS would take him and
put him in a terrible place.  CPS
interviewed Chip several times and he consistently denied the sexual
abuse.  The children were removed from
Appellant’s home when Chip was fourteen and the abuse stopped.  During his freshman year of high school, Chip
finally told his grandmother that he had been abused.  They did not make a police report until they learned
that Chip’s younger brother, Michael, was visiting Appellant.  

Thirteen-year-old
Michael testified at trial.  He recalled
that his family began living with Appellant when he was six or seven years old
and Michael shared a room with his mother and sister.  Chip slept in Appellant’s bedroom which only
had one bed.  Michael slept in
Appellant’s bedroom on three nights and he saw Appellant and Chip sleeping in
the same bed.  Michael slept on the
floor.  On one of those nights, he saw
Chip lying on his stomach with Appellant partially on top of and behind him.  Michael saw that Appellant’s hips were moving
back and forth under the sheets but Michael did not understand what he was
seeing.  On another night, Michael saw
Appellant on his back with his legs spread apart under the sheets and Chip was
under the sheets with his head near Appellant’s penis.  Chip’s head was moving up and down and
Appellant had his hands on Chip’s back.  Michael
knew this behavior was abnormal and he never slept in that bedroom again.  He never told anyone what he had seen because
he was too scared.

EXTRANEOUS OFFENSE

            In his first issue, Appellant argues
that the trial court abused its discretion by admitting an extraneous
offense.  The State responds that the
evidence was admissible to rebut the defensive theory of fabrication.  Alternatively, the State argues that
admission of the evidence is harmless.

            The trial court overruled
Appellant’s objections based on Texas Rules of Evidence 403 and 404(b) and
permitted Chip to testify that he saw Appellant molest another boy, Tony White,
to whom Appellant referred as his “play grandson.”  Chip believed that Tony was about twelve
years of age.  On one occasion when Tony
was at Appellant’s house, Chip looked in the bedroom and watched Tony
performing anal sex on Appellant.  The
defense later called Tony as a witness and he denied that Appellant had ever
engaged in any type of inappropriate or sexual contact with him.  

Relevant Law and Standard of Review

Evidence
of other crimes, wrongs, or acts is not admissible to prove the character of a
person to show action in conformity therewith. 
Tex.R.Evid. 404(b).  But it may be admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, or knowledge. Id. 
Rebuttal of a defensive theory is one of the “other purposes” for which
extraneous offense evidence may be admitted under Rule 404(b).  Williams
v. State, 301 S.W.3d 675, 687 (Tex.Crim.App. 2009); Dennis v. State, 178 S.W.3d 172, 180 (Tex.App.--Houston [1st Dist.]
2005, pet. ref’d).  This includes
rebutting the defensive theory that the complainant fabricated the allegations
against the defendant.  See Bass v. State, 270 S.W.3d 557, 563
(Tex.Crim.App. 2008); Dennis, 178
S.W.3d at 180-81.  The Court of Criminal
Appeals explained in Bass that if the
State can show that a defendant has committed similar sexual assaults against
unrelated and unconnected children, an affirmative defense allegation that the
complainant fabricated his claims is less likely to be true. Bass, 270 S.W.3d at 562-63.  By showing that the complainant’s allegations
are less likely to be fabricated, the evidence directly rebuts the defensive
claims and has logical relevance aside from character conformity.  Id.  

We
review the trial court’s admission of extraneous offense evidence for an abuse
of discretion.  De La Paz v. State, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); Prible v. State, 175 S.W.3d 724, 731
(Tex.Crim.App. 2005).  If the trial court’s
ruling is within the zone of reasonable disagreement, there is no abuse of
discretion.  Prible, 175 S.W.3d at 731.  A
trial court’s ruling on the admissibility of an extraneous offense is generally
within this zone if the evidence shows that (1) an extraneous transaction is
relevant to a material, non-propensity issue, and (2) the probative value of
that evidence is not substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading of the jury.  De La
Paz, 279 S.W.3d at 344.

Rebuttal of a Defensive Theory

            In his cross-examination of Chip,
Appellant’s attorney elicited testimony that when Chip was interviewed by the
CPS caseworkers in 2000, 2002, 2003, and 2004, he had on every occasion denied
any inappropriate touching or sexual contact by Appellant.  Counsel also questioned Chip about his
grandmother’s dislike of Appellant and her repeatedly asking Chip whether he
had been molested by Appellant.  This line
of questioning raised the defensive theory that Chip had fabricated the allegations
against Appellant in response to his grandmother’s influence.  In theory, evidence that Appellant had
sexually assaulted another child could make less probable Appellant’s claim
that Chip fabricated the allegations, and thus, would have relevance other than
character conformity.  In this case,
however, Chip provided the only testimony that the extraneous offense occurred
as Tony denied ever having any sexual contact with Appellant.  The question is whether Chip’s uncorroborated
testimony that Appellant committed an extraneous offense against another child is
logically relevant to make it less likely to be true that Chip fabricated the
allegations against Appellant.  Relying
on Pavlacka v. State, 892 S.W.2d 897
(Tex.Crim.App. 1994), Appellant contends that Chip’s testimony about the
extraneous offense is not relevant to any issue other than character
conformity.  

In
Pavlacka, the defense did not assert
that the complainant fabricated the allegations in response to an improper
influence or motive but the credibility of the complainant was impeached with a
prior inconsistent statement.  Id. at 899-01.  In response to the impeachment, the State
elicited testimony from the complainant that the defendant had molested him on
an occasion other than the one charged in the indictment.  Id. at
900-01.  The State argued the extraneous
offense evidence was admissible to “shore up” the credibility of the
complainant.  Id. at 899.  The First Court
of Appeals held that the evidence was relevant to rebut a defensive theory of
fabrication.  Pavlacka v. State, 848 S.W.2d 325, 327 (Tex.App.--Houston [1st
Dist.] 1993).  The Court of Criminal
Appeals reversed, holding that the defendant did not raise the defense of
fabrication and the extraneous offense evidence was not relevant to
rehabilitate the child’s credibility with respect to the charged offense.  Pavlacka,
892 S.W.2d at 901-03.  With respect to
the latter holding, the Court stated that “testimony of other molestations
coming from an impeached complainant cannot logically serve to rehabilitate
that complainant.”  Id. at 903.  The Court
further explained:

The question is one
of credibility.  The mere repetition of
allegations from a source of dubious credibility does not render that source
any more credible.  Absent some
independent corroboration, there is no better reason to believe the
complainant’s account of extraneous misconduct that there is to believe his
account of the misconduct for which the accused is on trial.  Simply put, an impeached complainant’s own
testimony as to other molestations, without more, is just as unreliable as
rehabilitative evidence of the accused’s lascivious intent and willingness to
act on it as is his testimony regarding the charged offense.  It cannot therefore serve logically to
rehabilitate him.  Because the only
source of evidence of the extraneous misconduct in this cause was the impeached
complainant himself, Michael, we hold it was not admissible to rehabilitate
him, notwithstanding language in Montgomery
and Vernon.  

 

Id. at 903.  In response to Pavlacka, the Legislature enacted Article 38.37 of the Code of
Criminal Procedure which applies in prosecutions of certain offenses against a
child under seventeen years of age and makes admissible evidence of other
crimes, wrongs, or acts committed by the defendant against the child who is the
victim of the charged offense, provided it is relevant to matters such as the
state of the mind of the defendant and the child and the previous and
subsequent relationship between the defendant and the child.  Tex.Code
Crim.Proc.Ann. art. 38.37, §§ 1, 2 (West Supp. 2012).  Thus, a portion of Pavlacka has been legislatively overruled.  But the Court’s holding that “testimony of
other molestations coming from an impeached complainant cannot logically serve
to rehabilitate that complainant” remains viable.  While the defense of fabrication was not at
issue in Pavlacka, the Court’s
holding and underlying logic would apply with equal force in a case where fabrication
has been raised.  We conclude that the
trial court abused its discretion by finding that Chip’s testimony about the
extraneous offense had relevance apart from character conformity.

Harm Analysis

The
erroneous admission of an extraneous offense is non-constitutional error.  Johnson
v. State, 84 S.W.3d 726, 729 (Tex.App.--Houston [1st Dist.] 2002, pet. ref’d).
 Rule 44.2(b) of the Texas Rules of
Appellate Procedure provides that any error, other than constitutional error,
that does not affect substantial rights must be disregarded.  Tex.R.App.P.
44.2(b).  A substantial right is affected
when the error had a substantial and injurious effect or influence on the jury’s
verdict. King v. State, 953 S.W.2d
266, 271 (Tex.Crim.App. 1997).  Substantial
rights are not affected by the erroneous admission of evidence if, after
examining the record as a whole, we have fair assurance that the error did not
influence the jury, or had but a slight effect.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002).   In
assessing the likelihood that the jury’s decision was adversely affected by the
error, the Court of Criminal Appeals has instructed that we consider everything
in the record, including any testimony or physical evidence admitted for the
jury’s consideration, the nature of the evidence supporting the verdict, the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Id. 
The reviewing court may also consider the jury instructions, the State’s
theory and any defensive theories, closing arguments, and even voir dire, if
applicable.  Id. at 355-56.

The
State’s case turned on the credibility of the complainant.  As already discussed, the defense impeached
Chip with his prior inconsistent statements and asserted that he fabricated the
allegations due to the influence of his grandmother.  Chip’s younger brother, Michael, corroborated
Chip by testifying that he witnessed two incidents where Appellant sexually
assaulted Chip.  Further, the State
offered the testimony of a child forensic interviewer, Carrie Paschall, who
explained why children failed to report or delayed reporting abuse.   

The
character of the erroneously admitted evidence weighs in favor of a finding of
harm.  Extraneous-offense evidence is
inherently prejudicial, tends to confuse the issues, and forces the accused to
defend himself against charges not part of the present case against him.  Sims v.
State, 273 S.W.3d 291, 294-95 (Tex.Crim.App. 2008); Higginbotham v. State, 356 S.W.3d 584, 593 (Tex.App.--Texarkana
2011, pet. ref’d).  An improperly
admitted extraneous offense encourages a jury to base its decisions on
character conformity, rather than evidence that the defendant committed the
offense with which he or she has been charged. 
Higginbotham, 356 S.W.3d at
593.

In
addition to considering the nature of the evidence, we must also consider its
relationship to other evidence in the case. 
In addressing this factor, we consider to what degree the State
emphasized the erroneously admitted evidence. 
See Motilla, 78 S.W.3d at 359.
 The presentation of the testimony about
the extraneous offense consumed only a small amount of time.  Chip’s direct examination about the
extraneous offense is found on eight pages of the reporter’s record.  The State’s presentation of its case-in-chief
on guilt-innocence, including objections and hearings conducted outside the
presence of the jury, is comprised of approximately 478 pages of the reporter’s
record.  Both prosecutors addressed the
jury during closing argument but only one of them mentioned the extraneous
offense and he focused the vast majority of his argument on the charged
offenses.  

White’s
denial that the extraneous offense occurred and his pointed testimony that
Appellant had never engaged in any type of inappropriate touching or sexual
contact with him certainly had the potential to significantly reduce the
inherent prejudice of the extraneous offense evidence.  This is especially true here because the
trial court instructed the jury that it could not consider the extraneous
offense evidence unless it found beyond a reasonable doubt that Appellant
committed the offense.  Appellate courts
generally presume that a jury followed the judge’s instructions.  Gamboa
v. State, 296 S.W.3d 574, 580 (Tex.Crim.App. 2009).  After reviewing the entire record and
considering the foregoing factors, we have a fair assurance that the error did
not influence the jury or had but a slight effect.  See
Higginbotham, 356 S.W.3d at 593 (error in admission of extraneous offense
evidence in prosecution for theft was harmless, despite fact that character of
erroneously admitted evidence weighed in favor of finding of harm, where
remaining factors overwhelmingly favored finding that error did not result in
harm; the State’s emphasis of extraneous offense was rather minimal, evidence
consisted of twenty-one pages out of approximately 300 pages of testimony
presented during guilt/innocence, testimony was confusing and contradictory,
and trial court instructed jury that it could not consider extraneous offense unless
the jury found beyond a reasonable doubt that the appellant had committed the
offense).  Having found that the error
did not result in harm to Appellant’s substantial rights, we overrule Issue
One.  

EXPERT WITNESS QUALIFICATION

            In Issue Two, Appellant argues that
Carrie Paschall, a child forensic interviewer, was not qualified to testify
regarding “grooming” and “Child Abuse Accommodation Syndrome” because she is
not qualified to testify as an expert in the field of psychology. 

Texas
Rule of Evidence 702 provides:  “If
scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education may
testify thereto in the form of an opinion or otherwise.”  Under Rule 702, the proponent of scientific
evidence must show, by clear and convincing proof, that the evidence he is
proffering is sufficiently relevant and reliable to assist the jury in accurately
understanding other evidence or in determining a fact in issue.  Weatherred
v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000).   The
reliability of “soft” science evidence may be established by showing that (1)
the field of expertise involved is a legitimate one, (2) the subject matter of
the expert’s testimony is within the scope of that field, and (3) the expert’s
testimony properly relies upon or utilizes the principles involved in that
field.  Id.  A trial court’s ruling
on the admissibility of scientific expert testimony is reviewed under an abuse
of discretion standard.  Id.

Paschall
is a child forensic interviewer in the Crimes Against Children Unit of the
Tarrant County District Attorney’s Office. 
She has a bachelor’s degree in political science and criminal
justice.  Prior to working as a child
forensic interviewer, Paschall worked for four and one-half years as an
investigator for Child Protective Services in a child sexual abuse unit and a
specialized unit that handled child homicide and severe child abuse cases.  She obtained her knowledge of “grooming” and Child
Abuse Accommodation Syndrome through specialized training and study.  At the time of trial, Paschall had conducted
over 4,500 forensic interviews of children. 
Although Appellant characterizes Paschall’s testimony as involving the
field of psychology and argues that she is required to be qualified as an
expert in that field, the Court of Criminal Appeals has recognized that grooming
of children for sexual molestation, as a phenomenon, is a legitimate subject of
expert testimony and grooming evidence has been received by courts from
numerous types of experts, including psychiatrists, psychologists, therapists,
and social workers.  Morris v. State, 361 S.W.3d 649, 666 (Tex.Crim.App. 2011).[2]  Further, the Court held that a law
enforcement official with a significant amount of experience with child sex
abuse cases may be qualified to testify about grooming.  Id.  Paschall’s testimony established that she is qualified,
by virtue of her training and experience, to testify about “grooming” Child
Abuse Accommodation Syndrome is likewise a recognized phenomenon and has been
held to be an appropriate subject for expert testimony.  The Court of Criminal Appeals addressed the
admissibility of expert testimony about this syndrome in Duckett v. State, 797 S.W.2d 906 (Tex.Crim.App. 1990), overruled on other grounds, Cohn v. State,
849 S.W.2d 817, 819 (Tex.Crim.App. 1993). 
According to Duckett, Dr. Roland Summit published an article
entitled, “The Child Sexual Abuse Accommodation Syndrome” (CSAAS) in 1983.  Duckett,
797 S.W.2d at 913 n.12, citing
Summit, The Child Sexual Abuse
Accommodation Syndrome, 7 Child Abuse
& Neglect 177 (1983).  Dr.
Summit described five characteristics commonly observed in child victims:  (1) secrecy, (2) helplessness, (3) entrapment
and accommodation, (4) delayed, conflicted, and unconvincing disclosure, and
(5) retraction.  Id.  The syndrome is not a
diagnostic tool and is not probative of the fact of abuse but may be probative
to explain a child’s seemingly contradictory conduct after abuse has allegedly
occurred.  Id.  CSAAS helps explain why
many sexually abused children recant allegations of abuse and deny that
anything occurred.  Id. at 913.  The expert
witness who testified about CSAAS in Duckett
was not a psychologist or psychiatrist but was a certified social worker and
advanced clinical practitioner who also held a certificate as an instructor
with the Texas Commission on Law Enforcement Officer’s Standards and Education
in the area of child sexual abuse investigation.  See id.
at 908.  We conclude that Paschall,
because of her training and significant experience with child sex abuse cases,
is qualified to testify about CSAAS.  See Morris, 361 S.W.3d at 666.  Finding no abuse of discretion, we overrule
Issue Two.  

CLOSING ARGUMENT

            In his final issue, Appellant
contends that the trial court erred by “suppressing” his attorney’s closing
argument.  One of Appellant’s theories
during trial was that Chip’s grandmother disliked Appellant and repeatedly
called CPS because he is African-American. 
On the first day of trial, Tamera testified that her mother did not want
her or the children around Appellant because he is African-American.  The following exchange occurred during
closing argument when defense counsel was addressing why CPS did not place the
children with the grandmother when they were removed from Appellant’s home:

[Defense
counsel]:  I submit to you that they
didn’t place them right away with the grandmother because she was a racist,
because she was a bigot.

 

[The
prosecutor]:  Objection, Your Honor.  That is nonsupported [sic] by the facts, and
it’s improper argument.

 

[The trial
court]:  Ladies and gentlemen, you’re the
fact finders.  You will remember and
recall the testimony as you previously heard it.  Please remember that the argument of Counsel
is to aid you in your deliberation, if any, but what they say is not evidence.

 

The trial court
did not sustain the State’s objection either expressly or impliedly, it did not
instruct the jury to disregard defense counsel’s argument, and it did not
prohibit counsel from continuing with the argument.  Even if the trial court had sustained the
State’s objection, that ruling would not have been erroneous because there is
no evidence that CPS did not place the children with the grandmother because
she is a racist.  Argument that
interjects facts not supported by the record is improper.  See Brown
v. State, 270 S.W.3d 564, 570 (Tex.Crim.App. 2008).  Issue Three is overruled.  Having overruled each issue, we affirm the
judgment of the trial court. 




 

 

September 26, 2012                            _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish) 











[1]  The victim is identified in the indictment by
a pseudonym.  See Tex.Code Crim.Proc.Ann. art.
57.01 (West 2006).  In order to maintain
the victim’s confidentiality, the opinion refers to all of the family members
by only their first names.





[2]  The Court of Criminal Appeals decided Morris after the parties filed their
briefs in this case.