

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00071-CR

TIMOTHY JAMES LINDBERG                                    APPELLANT

V.

THE STATE OF TEXAS                                             STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1255906D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found Appellant Timothy James Lindberg guilty of two counts of aggravated sexual assault of a child under fourteen and found in a special issue that the child was younger than six years of age. The trial court then assessed punishment at thirty-eight years' imprisonment. In nine issues, Lindberg argues

----

[1]*See* Tex. R. App. P. 47.4.

that the evidence is insufficient to support his convictions, that the trial court abused its discretion several times through the admission of evidence, and that the trial court erred during voir dire. We will affirm.

## II. BACKGROUND

A few months after Girl[2] was born, her Mother met Stacey through a Craigslist ad. Stacey agreed to babysit Girl, and the two women later became close friends. Stacey lived with Lindberg during the time she babysat Girl. Stacey and Lindberg have three children of their own, one of whom is four months older than Girl. During her first few years, Girl was at Stacey and Lindberg's house frequently. Girl even called Lindberg "T.J." or "Daddy." By the summer of 2011, however, when Girl had reached the age of four, she was going to the couple's house only occasionally.

On June 25, 2011, a Saturday night, Mother and Girl were eating at a restaurant with other family members. According to Mother, Girl announced to everyone present that when she was at Stacey's house the prior week, "T.J. put his tee-tee in [her] mouth." Mother testified that her first reaction was to explain to Girl that it was inappropriate to say such things, to which Girl allegedly replied, "Mommy, he really did for real. He put his tee-tee in my mouth." Mother said that everyone at the table appeared shocked by Girl's statement.

---

[2]We have used a pseudonym for the complainant and other parties where possible in an effort to protect the complainant's privacy.

After hearing Girl's statement, Mother said that she immediately went outside, called Stacey, and told her what Girl had said. By Mother's account, Stacey asked Mother to come over to discuss Girl's statement. Mother said that the two got in the car and began to drive to Stacey's house. But as they were driving and as Mother inquired further, Girl told Mother that she and Lindberg had been in the bathroom together, that he had put lotion on his penis, that he had put his penis in her "bottom," and that it had "hurt." Mother said that Girl even drew a penis shape in the air with her finger when asked what Lindberg's penis looked like. Mother decided to head home instead of proceeding to Stacey's home.

Mother said that at that moment she was in shock and did not know what to do. After Mother talked to others, she eventually called the police the following Monday morning, June 27, 2011. After meeting with the police, Mother took Girl to Alliance for Children, where child forensic interviewer Carrie Paschall interviewed Girl. Shortly after, Mother took Girl to Cook Children's Hospital for a physical examination by sexual assault nurse examiner Brenda Crawford.

Paschall testified that she interviewed Girl on June 29, 2011. Paschall said that during her interview with Girl, she conducted "a truth-lie scenario" with Girl in order to determine whether Girl knew "the truth versus a lie, right versus wrong." Paschall averred that she also conducted a "screening phase, which is where [she] used anatomical dolls to assess what [Girl] calls body parts and [to] ask her if she had ever been touched in any way." Paschall testified that after

3

these phases, she conducted a detail-specific interview based on the answers Girl gave her to the previous phases of the interview.

Paschall further answered the prosecutor's questions regarding the concepts of "rolling" and "roll back" disclosures. During this portion of Paschall's testimony, the following exchange occurred:

[Prosecutor]: What's a rolling disclosure?

[Paschall]: A rolling disclosure is when a child makes the decision to tell about something that has happened to them or has been happening to them. And what we see with a lot of children is --

[Defense Counsel]: Objection, Your Honor. It's going into what happens in other cases and such. It's improper. 401, 403 and 404.

THE COURT: That's overruled.

[Prosecutor]: You may continue.

[Paschall]: Okay. They oftentimes will tell the first person that they tell. They may tell a small portion of what happened to them. And the reason that they do that is they're gauging reactions, am I being believed, am I being protected, am I being listened to, am I being blamed, all of those things.

As they feel safe and protected, then they may disclose more information the next time that they talk to somebody. And we kind of see that pattern taking place throughout the course of the investigation sometimes and sometimes throughout the course of the lifetime. And we can see that happen in very small amounts of time or very lengthy amounts of time as well.

[Prosecutor]: Do children sometimes roll back their disclosure?

[Paschall]: Yes.

4

[Prosecutor]: And -- and what ways do you see that?

[Paschall]: I see them --

[Defense Counsel]: Again, Your Honor, this is totally improper as to trying to put in what happens in other cases, trying to suggest that the State's case should be considered when there's no evidence otherwise before the jury. And we object, Your Honor, that it's a -- a backdoor way of trying to say, well, you shouldn't believe the child except when she does something for us, and I object.

THE COURT: That's overruled.

[Prosecutor]: You may continue.

[Paschall]: Could you ask the question again? I'm sorry.

[Prosecutor]: The question was: Why would a child roll back disclosure?

[Defense Counsel]: Same objection.

THE COURT: Overruled.

[Paschall]: What I've seen in my experience is sometimes children will tell about something that happened to them, and as they grow older and gain more sexual knowledge, more self-awareness, sometimes embarrassment, shame, guilt set in, and it's harder to talk about those things that initially when they disclosed them, they didn't understand the full ramifications of what had happened to them.

And so sometimes we can see kids pull back a little bit on what they're saying for those reasons. They start to understand things a little more.

A video recording of Paschall's forensic interview was admitted into evidence at trial and played for the jury. In it, Girl can be heard stating that "T.J."

5

had put his penis in her mouth and that he had also pulled her pants down and had put his penis in her "butt" when she was at Stacey's house. In the video, Girl can be heard saying that when this occurred, Lindberg's penis was "sticking straight." Girl can also be heard saying that Lindberg had put lotion on his penis prior to putting his penis in her "butt." Girl can also be seen drawing a picture of what Lindberg's penis looked like on a drawing board.

Crawford also testified at trial about her medical examination. By Crawford's account, Girl's developmental level was on target for her age at the time she reported the alleged incident. Crawford averred that Girl reported that Lindberg had stuck his penis in her mouth. She also allegedly reported that he had pulled her pants down and put his penis in her "butt" and that this caused Girl pain. Crawford testified that she found no physical evidence regarding Girl's allegations but that in her professional opinion, she would not have expected to find such evidence given the time delay between when the alleged incident occurred and when the examination happened—approximately six days. Crawford testified that her "impression, based on the exam and what [Girl] told [her], was sexual abuse, no anal/genital injuries noted."

Girl was seven years old at the time of trial. She said that when she was four years old, she saw Lindberg's penis while she was in the bathroom with him at Stacey's house. Girl also testified that Lindberg put water on his penis and then put it in her mouth. Girl described Lindberg's penis as "tan" and "soft" and

said that nothing came out of it when these alleged events occurred. Girl testified that Lindberg had not touched her anywhere else on her body.

After the State closed, both Lindberg and the State introduced a stipulation to the jury that Girl, on November 23, 2013, had stated to two assistant district attorneys that Lindberg had not caused his penis to contact her anus.

Stacey testified in Lindberg's defense. Stacey stated that Lindberg had been home alone with some of their children and Girl when the alleged assaults were reported to have happened. She stated, however, that she did not believe Girl's outcries.

Lindberg testified at trial. He denied committing the offense but agreed that he had the opportunity to be alone with Girl for multiple hours at the time the alleged events occurred. Lindberg also said that he thought of Girl like his own daughter and that he did not know why she had made these accusations about him.

A jury found Lindberg guilty of two counts of aggravated sexual assault of a child—count one alleging that Lindberg caused Girl's mouth to contact his penis and count two alleging he caused Girl's anus to contact his penis. The jury also found "true" the special issue that Girl was under six years of age at the time of the offenses. The trial court assessed punishment at thirty-eight years' confinement for each count, with the sentences to be served concurrently. This appeal followed.

### III. DISCUSSION

### A.   Sufficiency of the Evidence

In his first and eighth issues, Lindberg argues that the evidence is insufficient to support both counts of aggravated sexual assault.  Specifically, in his first and eighth issues, Lindberg argues that the State failed to present evidence that he "intentionally or knowingly" committed aggravated sexual assault.  In his eighth issue, Lindberg argues that the trial court erred by denying his motion for directed verdict on count two, which alleged that he caused Girl's anus to contact his penis.  We disagree.

### 1.   Standard of Review and Aggravated Sexual Assault

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.  Thus, when performing an evidentiary sufficiency review, we

may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014)

9

("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

The testimony of a child victim alone may be sufficient to support a conviction for aggravated sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2014); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd), *cert. denied*, 538 U.S. 963 (2003). Furthermore, a child complainant's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault. *Kimberlin v. State*, 877 S.W.2d 828, 831–32 (Tex. App.—Fort Worth 1994, pet. ref'd) (*citing Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991)).

A person commits the offense of aggravated sexual assault of a child when, as it applies to count one of the State's indictment in this case, he intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor. Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii) (West 2011). As to count two of the State's indictment, a person commits aggravated sexual assault of a child if the person intentionally or knowingly causes his sexual organ to contact the anus of a child younger than fourteen years of age. *Id.* § 22.021(a)(1)(B)(i), (a)(1)(B)(iv), (a)(2)(B).

### 2. Intent as to Counts One and Two

In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). Further, a culpable mental state can be inferred from the acts, words, and conduct of the accused. *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.— Houston [14th Dist.] 2007, no pet.). And there is no requirement for an oral expression of intent—the conduct itself is sufficient to infer intent. *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.).

Here, viewing the evidence in a light most favorable to the jury's verdict, a rational jury could have found that Lindberg intended to cause Girl's mouth to contact his penis when, by her statements, he placed water on his penis and then placed it in her mouth. Further circumstances supporting Lindberg's intent include that no other adults were around when these events occurred and that Girl reported that Lindberg's penis was "sticking straight" when he placed it in her mouth. *See Tear*, 74 S.W.3d at 560 ("The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault."). Likewise, a rational jury could have found the requisite intent regarding count two, that he caused his sexual organ to contact Girl's anus, when, by her statements, he placed lotion on his penis and put his penis in her "butt." Further circumstances

11

supporting Lindberg's intent are the child's report to Mother, Paschall, and Crawford that it hurt when Lindberg had done this.

Moreover, regarding both counts, the State introduced evidence that Girl said that "T.J" had done these things, that it was known that she referred to Lindberg as "T.J.," and that Girl demonstrated the ability to twice draw Lindberg's penis as well as describing its color.

Viewing all of the evidence in the light most favorable to the prosecution, we hold that the evidence is sufficient to support the jury's determination that Lindberg intended to commit both of the State's counts of aggravated sexual assault. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

### 3. Count Two

As to count two, Lindberg argues that the trial court erred by denying his motion for directed verdict. Specifically, Lindberg argues that the "State offered no real evidence" that he had caused Girl's anus to contact his penis. We disagree.

The State introduced evidence, by way of Mother, Crawford, and a video of Paschall's forensic interview, that Girl had reported that Lindberg put his "tee-tee" in her "butt" after having applied lotion to his penis. *See Tear*, 74 S.W.3d at 560 ("[A] child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault."). The evidence from these three sources also demonstrated that Lindberg's actions hurt Girl.

We are mindful that Lindberg objects in later issues that these three sources of evidence should not have been admitted; however, when conducting a sufficiency of the evidence review, we must consider all the evidence admitted at trial, even improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

Viewing the evidence in light most favorable to the jury's verdict, we hold that a rational factfinder could have found the essential elements as alleged in count two of the State's indictment. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170. We overrule Lindberg's first and eighth issues.

## B.    Challenges for Cause

In his second issue, Lindberg argues that the trial court erred by granting the State's challenge for cause to Veniremember Number Fifty and by also denying his challenge for cause to Veniremember Number Twenty-Five. The State counters that the trial court did not err by granting its challenge for cause to Veniremember Number Fifty because the juror had shown bias or prejudice and that the trial court did not err by denying Lindberg's challenge for cause to Veniremember Number Twenty-Five because the juror had not demonstrated that he would not follow the law. We agree with the State.

### 1.    Voir Dire

During voir dire, the State discussed the "one-witness rule." *Lee v. State*, 206 S.W.3d 620, 621 (Tex. Crim. App. 2006). At the beginning of the discussion,

13

the State gave an example of a robbery in a deserted parking lot and then explained,

> It's called the one -- one-witness rule, that if one witness comes in and testifies and test -- remember all those things -- we call them elements, the on or about, reasonable, all that stuff, intentionally or knowingly.  If that one witness comes in and testifies to all those elements and you believe that witness beyond a reasonable doubt, what's your verdict?

After the State discussed this with the panel, Veniremember Number Fifty asked, "What's to prevent me from saying that you were the person that assaulted me in the parking lot just -- you know, you may have looked at me wrong, you know, in the courtroom?"  The State responded, "Well, I guess there's nothing saying that -- stopping you from saying it."  Then the following exchange occurred:

> [Veniremember Number Fifty]:   Right.
>
> [STATE]:   In a jury trial, I'm hoping that through cross-examination, direct testimony, the jury -- I'd be hoping the jury would see that it's not proven beyond a reasonable doubt.  You see what I'm saying?
>
> [Veniremember Number Fifty]:   If I meet all the -- the qualifications beyond a reasonable doubt, it could still be not telling the truth.
>
> [STATE]:   Could be.  But here's the question: If you believe a witness beyond a reasonable doubt and it's only one witness and it's proven it's -- the State's proven its case beyond a reasonable doubt regarding each of the elements of the offense through one witness, how would you find the Defendant?
>
> [Veniremember Number Fifty]:   You still got human nature to take --

14

[STATE]:   Yes.

[Veniremember Number Fifty]:   -- into consideration, and it would be hard to find a guilty verdict.

[STATE]:   Right. I'd be hard, but would you do it? If you can't do it, it's okay.

[Veniremember Number Fifty]:   No.

[STATE]:   Couldn't do it?

[Veniremember Number Fifty]:   No, sir.

[STATE]:   And I'm going to have to kind of backtrack a little bit. So the State calls one witness, and through that one witness, we've got testimony and you believe beyond a reasonable doubt each element of the offense based on that one witness' testimony, would you still find the Defendant not guilty?

[Veniremember Number Fifty]:   Yes.

[STATE]:   Okay.  Even though the Judge has instructed you that if you believe beyond a reasonable doubt that the Defendant's guilty --

[Veniremember Number Fifty]:   Again, I pose my question, What's to prevent someone from lying?

[STATE]:   And so no matter -- you believe beyond a reasonable doubt, but because only one witness testified, you'd still find the Defendant not guilty?

[Veniremember Number Fifty]:   Yes.

[STATE]:   And so you're holding the State to a higher burden?

[Veniremember Number Fifty]:   Yes.

[STATE]:   Thank you, sir.  I appreciate it.

15

At another moment during the State's voir dire, Veniremember Number Twenty-Five stated that he could not "leave [his] intuition at the door." The following colloquy occurred:

[STATE]: Well, intuition may be a part here, because as a juror, you may not feel -- you may have a feeling that this person's lying. And if you think that, you can certainly use that as part of your decision making as to whether or not you believe everything they say, none of what they say or part of what they say. Okay?

Because you're the judges of the facts. He's wearing the robe; he's the judge of the law. When you're sitting over here, you'll be the judge of the facts. Does that make sense?

[Veniremember Number Twenty-Five]: Yes.

[STATE]: Am I doing an okay job here?

[Veniremember Number Twenty-Five]: Reasonable.

[STATE]: Reasonable. Don't pat me on the back too much.

So what's your question, sir?

[Veniremember Number Twenty-Five]: Well, I'm back to intuition again, is when -- are jurors allowed to use their intuition? If so, when during the process?

[STATE]: I would say this is the part right here. When that person comes up here and takes the oath and starts giving you answers, there could be a way in which they're talking that you don't like and that you -- you think is lending themselves to be untruthful; or you may see a way that they're talking like this person's telling the truth. I mean, we do that in interact -- social interactions every day, don't we?

16

> Is that a yes or no?

> [Veniremember Number Twenty-Five]: Well, I -- both visible and sensed.

> [STATE]: And I most certainly think you can do that whenever you're listening to someone's testimony. Okay?

> [Veniremember Number Twenty-Five]: I'm uneasy about it.

> [STATE]: Well, I understand -- I can understand being uneasy about it, but it will be your job. You'll be instructed that you can believe everything somebody says, some of what they say, none of what they -- or none of what they say. That's going to be your job as a jury.

> And because, you know, there may -- because the child waited a long time, there may not be any physical evidence. There may not -- there may not be DNA. There may not be findings. It may just be testimony. You see what I mean?

> [Veniremember Number Twenty-Five]: Yes.

> [STATE]: So do you have any issues now?

> [Veniremember Number Twenty-Five]: No.

> [STATE]: Okay. Thank you, sir.

Later, Lindberg questioned Veniremember Number Twenty-Five through the following exchange:

> [Defense Counsel]: And, [Veniremember Number Twenty-Five], you had mentioned, you know, because you were a father of -- of small children, that you would have a problem sitting as a juror in this kind of a case; is that correct?

> [Veniremember Number Twenty-Five]: I think that after discussing it with the State, what -- what really, I think, was come to

17

(sic) was if there are moments we're supposed to use intuition and balancing the facts, that comes into play, of course. If I feel like a child's -- a kid -- if they're not telling the truth, that might -- that might change the way I -- I view it. But I don't feel, in general, that children lie any more than human -- adults.

[Defense Counsel]: Let me ask you about using intuition. What do you mean by intuition? You just kind of say, Well, yeah, I look at that person and they're a truth-teller or, you know, just before they say a word, or they're a liar, or what is intuition? I'm not sure.

[Veniremember Number Twenty-Five]: Well, what is intuition or how is that --

[Defense Counsel]: What is it?

[Veniremember Number Twenty-Five]: Well, I mean, it's a -- an understanding of a situation based on things that aren't as tangible as pure facts.

[Defense Counsel]: So you would sort of resolve questions based upon your emotions or your feelings about it?

[Veniremember Number Twenty-Five]: I believe that's what we're being asked to do, yeah.

[Defense Counsel]: Okay. I appreciate it. Thank you, sir.

At the conclusion of voir dire, the State challenged Veniremember Number Fifty for cause, arguing that he would hold the State to a higher burden than required. The court granted the challenge for cause. Lindberg then asked for an

18

additional peremptory challenge "because the State has 11 strikes, and -- and we only got 10." The court deferred ruling on the request, stating that it would evaluate it at the "conclusion of the strikes."

Later, Lindberg challenged Veniremember Number Twenty-Five for cause, arguing that the veniremember had "said that he had small children and it would affect him in how he decides the cases and, in fact, he would use intuition to fill in the gaps for evidence." The court denied the challenge.

### 2.    Standard of Review

We review a trial court's ruling on a challenge for cause with considerable deference because the trial court is in the best position to evaluate the veniremember's demeanor and responses. *Newbury v. State*, 135 S.W.3d 22, 32 (Tex. Crim. App.), *cert. denied*, 543 U.S. 990 (2004); *Tucker v. State*, 183 S.W.3d 501, 511 (Tex. App.—Fort Worth 2005, no pet.). We reverse a trial court's ruling on a challenge for cause only upon a clear abuse of discretion. *Newbury*, 135 S.W.3d at 32; *Curry v. State*, 910 S.W.2d 490, 493 (Tex. Crim. App. 1995); *Tucker*, 183 S.W.3d at 511. In determining whether the trial court abused its discretion, we review the total voir dire record in context. *See Mathis v. State*, 67 S.W.3d 918, 924 (Tex. Crim. App. 2002); *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *Emenhiser v. State*, 196 S.W.3d 915, 927 (Tex. App.—Fort Worth 2006, pet. ref'd).

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." Tex.

19

Code Crim. Proc. Ann. art. 35.16(a) (West 2001). When a veniremember is challenged for cause because he could not convict based upon one witness whom he believed beyond a reasonable doubt and whose testimony proved every element of the indictment beyond a reasonable doubt, then the veniremember is validly challenged for cause. *Lee*, 206 S.W.3d at 623.

### 3. Veniremember Number Fifty

Here, Veniremember Number Fifty specifically stated that he would not be able to convict a defendant based on the testimony of one witness regardless of whether he believed that witness and regardless of whether the witness's testimony established the elements of the crime. We hold that the trial court did not clearly abuse its discretion by granting the State's challenge for cause as to Veniremember Number Fifty. *See id.*

### 4. Veniremember Number Twenty-Five

Lindberg also argues that the trial court erred by not granting his challenge for cause as to Veniremember Number Twenty-Five. Specifically, Lindberg argues that Veniremember Number Twenty-Five effectively said that he would base his conclusions on mere speculation or factually unsupported inferences or presumptions. We see nothing in the record to support that Veniremember Number Twenty-Five made any such statement. It is evident, when looking at the voir dire as a whole, that Veniremember Number Twenty-Five effectively said that he would use his own experiences to determine whether a child was telling the truth. Determining the credibility of a witness's testimony is the province of

20

the jury. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony."), *cert. denied*, 532 U.S. 944 (2001); *see also Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011) ("We look at the entire record of voir dire to determine if the evidence is sufficient to support the court's ruling on a challenge for cause."). Therefore, we cannot conclude that the trial court clearly abused its discretion by denying Lindberg's challenge to Veniremember Number Twenty-Five. We overrule Lindberg's second issue.

### C. Mother's and Crawford's Testimony

In his third issue, Lindberg alleges that the trial court "erred, abused its discretion and violated a substantial right of" his by allowing Mother and Crawford to testify regarding out-of-court statements made by Girl. Lindberg essentially argues that the two witnesses' testimony was inadmissible hearsay. The State argues, among several retorts, that Mother's testimony fell under the "outcry" exception to hearsay and that Crawford's testimony pertained to medical diagnosis and treatment, and therefore both witnesses' testimony was admissible. We agree with the State.

#### 1. Mother's Testimony

Hearsay is generally inadmissible. Tex. R. Evid. 802. But article 38.072 of the Texas Code of Criminal Procedure provides that an outcry statement is not inadmissible on the basis that it is hearsay if, in relevant part, (1) the statement describes a sexual assault offense that a defendant committed against a child

21

younger than fourteen years of age; (2) the statement was made by the child to the first person who was eighteen years old or older, other than the defendant, that the child spoke to about the offense; and (3) the "trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." Tex. Code Crim. Proc. Ann. art. 38.072, §§ 1(1), 2 (West Supp. 2014); *see Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011); *West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd). Outcry testimony admitted in compliance with article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony. *Duran v. State*, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.).

A trial court's decision that an outcry statement is reliable and admissible under article 38.072 will not be disturbed absent a clear abuse of discretion. *Id*.; *see Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court abuses its discretion by admitting a statement under article 38.072 only when the court's decision falls outside of the zone of reasonable disagreement. *Bautista v. State*, 189 S.W.3d 365, 367 (Tex. App.—Fort Worth 2006, pet. ref'd).

In this case, the trial court conducted a hearing outside the jury's presence to determine when and how Girl had revealed to Mother what Lindberg had allegedly done to her. Mother testified that Girl told her that "T.J. put his tee-tee" in Girl's mouth and that Girl told Mother when this happened. At the hearing, Mother also averred that as the two drove toward Stacey's house, Girl further

22

explained that Lindberg had put his penis in her "butt" and that it hurt. Mother further testified that Girl was able to draw in the air with her finger what Lindberg's penis looked like.

Relying on this court's decisions in *In re M.R.* and *Moon v. State*, Lindberg argues that Mother's questions to Girl during their car ride somehow made Girl's out-of-court statements unreliable. *In re M.R.*, 243 S.W.3d 807, 813–15, 819 (Tex. App.—Fort Worth 2007, no pet.); *Moon v. State*, 856 S.W.2d 276, 279–81 (Tex. App.—Fort Worth 1993, pet. ref'd). We find nothing in either of these cases to support Lindberg's reliance on them. Contrary to Lindberg's assertions, *In re M.R.* does not stand for the proposition that follow-up questions make a child's outcry statement unreliable per se. 243 S.W.3d at 819. Indeed, this court concluded in *Moon* that the forensic interviewer's questioning of the children complainants did not undermine the reliability of the children's admissible outcry statements. 856 S.W.2d at 279.

In short, the trial court had testimony before it regarding the time, content, and circumstances of Girl's outcry. We conclude that the trial court did not abuse its discretion by determining that Mother was the outcry witness in accordance with article 38.072 and that her testimony was reliable. *See Josey v. State*, 97 S.W.3d 687, 692 (Tex. App.—Texarkana 2003, no pet.) (holding trial court did not abuse discretion by finding mother proper outcry witness where child-complainant told mother that defendant put his penis in child's mouth).

23

### 2. Crawford's Testimony About What Girl Said

Rule 803(4) provides an exception to the hearsay rule for "A statement that: (A) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; or their inception; or their general cause." Tex. R. Evid. 803(4). This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment. *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd).

Here, Crawford specifically testified to what Girl told her during Crawford's sexual assault examination of Girl. Crawford's testimony fell under the well-established exception to the inadmissibility of hearsay found in Rule 803(4). *See Bautista*, 189 S.W.3d at 369 (listing a multitude of Texas appellate decisions upholding this well-established exception to hearsay and the circumstances in which it might apply). We overrule Lindberg's third issue.

### D. Crawford's Diagnosis

In his fourth issue, Lindberg argues that the trial court erred by allowing Crawford to testify that "she had diagnosed sexual abuse based on what [Girl] told her." The State counters that Crawford's testimony was both reliable as expert testimony and was necessary to rebut Lindberg's opening argument that if he had committed aggravated sexual assault by inserting his penis into Girl's anus, "surely there'd be some sort of tear, bruising or something."

We agree with Lindberg that Crawford's testimony that she had diagnosed sexual abuse solely on what Girl told her and her lack of finding any physical indications of assault was impermissible. *See Salinas v. State*, 166 S.W.3d 368, 371 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding impermissible expert testimony diagnosing sexual abuse based on a child's medical history alone). We are also not swayed by the State's argument that Crawford's testimony of her diagnosis based solely on what Girl had told her was necessary to rebut his opening statement. Indeed, Crawford's testimony that no physical indications of sexual assault were present and that this was typical was sufficient to rebut the "[opened] door" regarding Lindberg's claim that "surely there'd be some" physical injury.

Much like in *Salinas*, we conclude that Crawford's testimony that she diagnosed sexual abuse based solely on Girl's statements and no findings of physical injury was non-constitutional error. *Id.* Because we determine that the error is not constitutional, rule 44.2(b) is applicable. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (*citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

25

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Here, the record includes testimony from Mother that Girl told her that "T.J. put his tee-tee" in her mouth and her "bottom." Mother also testified that Girl told her that Lindberg had put lotion on his penis before "put[ting]" it in her bottom. Furthermore, and as we will address the admissibility of below, the jury was provided with a video of Paschall's forensic interview of Girl, in which Girl can be heard stating again that "T.J." had inserted his penis into both her "mouth" and "butt." The video also included visual demonstrations of Girl expressing these things while using anatomically correct dolls, and Girl drew what she purported to be Lindberg's penis in the video. And even though Crawford should not have been allowed to comment on the credibility of Girl by testifying to her diagnosis based solely on Girl's statements, the trial court properly allowed Crawford to testify to what Girl reported to her as part of the medical exam. Furthermore, and even though Lindberg argues that Crawford's testimony was emphasized, we conclude that the State did not emphasize Crawford's testimony regarding her

26

diagnosis; rather, the State emphasized that Girl's statements to Mother, Paschall, and Crawford were consistent. *See Salinas*, 166 S.W.3d at 371 (holding impermissible testimony from medical examiner harmless). We overrule Lindberg's fourth issue.

### E. Rolling Disclosures

In his fifth issue, Lindberg argues that the trial court erred by allowing Paschall to testify about "rolling" disclosures and "what happens in other cases." Specifically, Lindberg argues that Paschall's testimony about rolling disclosures was irrelevant in that it "improperly bolster[ed] the State's other evidence" and "it was not sufficiently tied to the facts of the case to aid the jury in resolving a factual dispute." The State argues that Paschall's testimony was properly admitted expert testimony. We agree with the State.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). Expert testimony that a particular witness is truthful is inadmissible under Tex. R. Evid. 702. *See* Tex. R. Evid. 702; *Pavlacka v. State*, 892 S.W.2d 897, 902 n.6 (Tex. Crim. App. 1994); *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993); *Chavez v. State*, 324 S.W.3d 785, 788 (Tex. App.—Eastland 2010, no pet.). Therefore, an expert witness may not offer a direct opinion on the truthfulness of a child complainant's allegations. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount*, 872 S.W.2d at 708; *Chavez*, 324 S.W.3d at 788. Nor may an expert offer an opinion that the class of persons to which the

27

complainant belongs, such as child sexual abuse victims, is truthful or worthy of belief. *Pavlacka*, 892 S.W.2d at 902 n.6; *Yount*, 872 S.W.2d at 712; *Chavez*, 324 S.W.3d at 788–89. But testimony from an expert witness about behaviors commonly exhibited by children suffering sexual abuse can be relevant and admissible under Rule 702. *Yount*, 872 S.W.2d at 708–09; *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993); *Chavez*, 324 S.W.3d at 789. Such testimony is not objectionable on the ground that it bolsters the credibility of the child complainant. *Cohn*, 849 S.W.2d at 820–21; *Chavez*, 324 S.W.3d at 789.

In this case, Paschall did not offer a direct opinion that Girl was truthful or that she belonged to a class of persons that was truthful or worthy of belief. Instead, Paschall offered testimony that it is a common behavior exhibited by children who have suffered sexual abuse to tell small portions of what had happened to them in order to gauge the reaction of the adults that they are disclosing the abuse to. Paschall also testified that this same class of children will sometimes "roll back" their disclosures as they mature and "gain more sexual knowledge" and "self-awareness." Specifically, Paschall said that sometimes the "guilt" or "shame" associated with sexual abuse can cause some children to "pull back a little bit on what they're saying." This evidence was expert testimony regarding behaviors commonly exhibited by children who have suffered sexual abuse, and it is not objectionable on the grounds that it bolstered the credibility of Girl. *Cohn*, 849 S.W.2d at 820–21; *Chavez*, 324 S.W.3d at 789.

Further, Paschall's testimony was directly relevant to the fact that Girl, after having told three people that Lindberg had placed his "tee-tee" in her "butt," later said that Lindberg had not placed his penis anywhere on her person but in her mouth. We hold that the trial court did not abuse its discretion by allowing Paschall to testify regarding rolling disclosures. *See Lair v. State*, No. 02-12-00068-CR, 2013 WL 4033618, at *3 (Tex. App.—Fort Worth Aug. 8, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse discretion by allowing expert to testify regarding "rolling disclosures"); *Dison v. State*, No. 11-09-00094-CR, 2011 WL 1435201, at *6 (Tex. App.—Eastland Apr. 14, 2011, pet. ref'd) (mem. op., not designated for publication) (same). We overrule Lindberg's fifth issue.

**F. Videotaped Forensic Interview**

In his sixth and seventh issues, Lindberg argues that the trial court abused its discretion by allowing the State to play for the jury the entire videotaped recording of Paschall's forensic interview with Girl. Lindberg also argues that he was entitled to a limiting instruction regarding the videotaped interview. The State argues that the videotaped recording was necessarily admitted by the trial court in order to rebut Lindberg's defensive theories that Girl had been coached to say that "T.J. put his tee-tee in my mouth" and that Girl had actually described a different person, Mother's boyfriend, as the alleged assailant in her forensic interview.

Rule 107, the rule of optional completeness, is a recognized exception to the general rule prohibiting admission of hearsay. Tex. R. Evid. 107; *Mick v. State*, 256 S.W.3d 828, 831 (Tex. App.—Texarkana 2008, no pet.). This rule is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Walters v. State*, 247 S.W.3d 204, 217–18 (Tex. Crim. App. 2007). It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Id.* Rule 107 does not permit the introduction of other similar, but inadmissible, evidence unless it is necessary to explain properly admitted evidence. *Id.* Further, the rule is not invoked by the mere reference to a document, statement, or act. *Id.*

Generally, when a portion of a videotaped conversation is inquired into by the defense, the State is entitled to offer any other evidence that is necessary to make the conversation fully understood. *Credille v. State*, 925 S.W.2d 112, 117 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). More precisely, under Rule 107, the State is entitled to admission of a complainant's videotaped statement when (1) the defense attorney asks questions concerning some of the complainant's statements on the videotape, (2) the defense attorney's questions leave the possibility of the jury's receiving a false impression from hearing only a part of the conversation, with statements taken out of context, and (3) the

videotape is necessary for the conversation to be fully understood. *Id.* at 116–17.

Here, during opening arguments, Lindberg stated that during Girl's forensic interview, Girl "was walking around and just kept repeating, T.J. put his tee-tee in me, and it hurt, and kept repeating it like somebody had told her." Later in opening argument, Lindberg argued that during the interview, Girl described "a person with no hair. . . . As you can see, [Lindberg's] . . . got hair." Lindberg even argued in opening argument that the "person living with [Girl's] mother doesn't have hair and fits the exact description" of the person Girl described in the forensic interview. Later, when questioning Mother, Lindberg repeatedly asked Mother questions regarding statements Girl made in the interview. And again, during cross-examination of Girl, Lindberg asked Girl about statements she had made during the interview.

These opening statements and repeated questions left open the possibility that the jury would receive a false impression—that Girl had denied that Lindberg touched her "butt" with his penis, that Girl had described a person other than Lindberg as the assailant, or that Girl appeared to have been coached to make the statements that she made during the interview. Therefore, for the jury to fully understand the context of the conversations and determine which interpretation was correct, the trial court determined it was necessary to review the videotape.

Our standard of review is abuse of discretion. Thus, the question before this Court is whether the trial court's decision was "outside the zone of

31

reasonable disagreement." *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). We conclude that the court's decision was within the bounds of its discretion and overrule Lindberg's sixth and seventh issues. *See Mick*, 256 S.W.3d at 831–32 (holding videotaped forensic interview admissible in prosecution for aggravated sexual assault of a child under rule of optional completeness where defense attorney's questions to detective about child's statements on recording left open possibility that jury would receive false impression); *see also Hoover v. State*, No. 03-05-00641-CR, 2007 WL 619500, at *7 (Tex. App.—Austin Feb. 27, 2007, no pet.) (not designated for publication) ("Moreover, because the evidence was admissible under rule 107 for all purposes, no limiting instruction was necessary at the time the evidence was introduced or in the charge.").

## G.    Prosecutor's Closing Argument

In his ninth issue, Lindberg argues that the trial court erred by overruling his objection to the State's referral to statements made by Girl in the videotaped interview as "testimony" during closing arguments. We disagree.

Proper jury argument generally encompasses one of the following: (1) an answer to the opposing counsel's argument; (2) a summation of the evidence presented at trial; (3) a reasonable deduction drawn from that evidence; or (4) a plea for law enforcement. *Wesbrook*, 29 S.W.3d 103 at 115. To determine whether a party's argument falls within one of these categories, the court considers the argument in light of the entire record and within the context in

32

which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). A trial court's ruling on an objection that jury argument is improper is reviewed for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).

Here, the trial court did not abuse its discretion by determining that the State's argument was a proper summation of the evidence. *See Wesbrook*, 29 S.W.3d at 115. The prosecutor simply referred to Girl's statements on the forensic interview video as "testimony" rather than "evidence." Lindberg does not explain why, according to his briefing, this description was "extreme and manifestly improper." As the State points out, it seems likely that the video was referred to as "testimony" because that was what it was most like, and it would have been easy for jurors to understand the prosecutor's argument. We overrule Lindberg's ninth issue.

## IV. Conclusion

Having overruled all nine of Lindberg's issues, we affirm the trial court's judgments.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 24, 2015

33